UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY TUENS,<br><br>           Plaintiff,<br><br>     v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>           Defendants. | Case No. 20-cv-03459-JST<br><br>**ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE REMANDED**<br><br>Re: ECF Nos. 7, 8 |

  Before the Court are two motions to dismiss the complaint filed by Defendants U.S. Bank National Association and U.S. Bancorp (collectively, "U.S. Bank"), ECF No. 7, and by Defendant Martim L. De Arantes Oliveira, ECF No. 8.  Before the Court can reach the merits of these motions, however, it must first satisfy itself that it has subject matter jurisdiction.  Defendants claim there is diversity jurisdiction because Defendant Oliveira is improperly joined, given that Plaintiff Tracy Tuens' complaint does not state a valid cause of action against him.  Thus, the Court must consider whether Tuens states a cause of action against Defendant Oliveira and, if she does not, whether there is any possibility she can do so.  If she either states a cause of action against Oliveira or might be able to do so, then there is no diversity because both Tuens and Oliveira are California citizens.  If Tuens' complaint does not state a cause of action against Oliveira and there is no possibility she can do so, then Oliveira must be dismissed with prejudice.  Only in the latter event could the Court proceed to consider the motion to dismiss filed by the remaining corporate defendants.

  As set forth below, the Court concludes that there is a possibility that Tuens can state a cause of action against Oliveira and that this Court therefore lacks subject matter jurisdiction.  The Court accordingly issues an order to show cause why this case should not be remanded to the San

Francisco Superior Court.

## I. BACKGROUND

### A. Factual Background

The Court takes as true the following allegations from the complaint. Tuens alleges that in May 2016, U.S. Bank hired her to serve as a Managing Director, Client Advisory in its Ascent Private Capital Management division ("Ascent"). ECF No. 1-1 at 6-33 ("Compl.") ¶ 5. Her role involved advising private investors and family office clients on Ascent's financial services and solutions. *Id.* Tuens alleges that developing suitable clients for Ascent is widely known to be difficult and time consuming: it typically takes one year to develop significant business from a client and two years or more to generate significant revenue. *Id.* ¶¶ 6, 7. During her first several months of employment, Tuens was "significantly hampered in her ability to develop new business" due to restrictive covenants from her prior job. *Id.* ¶ 10. Nonetheless, her immediate supervisor, Oliveira, "never once criticized . . . her lack of progress." *Id.*

In December 2016, Tuens was hospitalized after being diagnosed with a serious medical condition. *Id.* In the hospital, she went into septic shock, and her physicians gave her less than a 20 percent chance of survival. *Id.* She survived two code blue incidents in the cardiac unit and remained on a leave of absence until March 2017, when she returned to work against her doctors' wishes. *Id.* ¶¶ 10, 11.

Despite her medical limitations, which Tuens conveyed to Oliveira, Tuens made progress toward developing "a significant pipeline of business" after she returned to work, although business development opportunities she had pursued prior to her hospitalization had "dissipated." *Id.* ¶¶ 11, 12. According to Tuens, her efforts were also undermined by the requirement that she "spend a significant amount of her work time promoting one of Ascent's executive's books." *Id.* ¶ 12.

On July 20, 2017, Tuens was issued an "Action Plan" for "Unsatisfactory Performance," under which a condition of her continued employment was sourcing and closing two sales opportunities by September 30, 2017, and December 31, 2017. *Id.* ¶¶ 13, 14. The Action Plan stated that Tuens had failed to comply with the terms of the business plan she developed in 2015

2

when she was interviewing for the job. *Id*. ¶ 14. Tuens claims the business plan, which "outlined an aspirational picture of client development activities," *id*. ¶ 9, assumed an earlier start date and did not take into account her hospitalization and medical leave, *id*. ¶ 14. Furthermore, Tuens claims she was never told that the business plan would be used to evaluate her performance. *Id*. ¶ 9.

Tuens sent an email to her managers stating that U.S. Bank "should have considered 'a reasonable accommodation'" rather than issuing a final warning. *Id*. ¶ 16. U.S. Bank "ignored the request" but shifted the timeline so both pieces of business were due by December 31, 2017. *Id*. ¶ 17. Tuens made "repeated complaints to Human Resources that she was being discriminated against" and about U.S Bank's refusal to consider accommodations. *Id*. ¶ 20. "These complaints were all ignored." *Id*.

Although Tuens met the sales metric by the December 31 deadline, she did not get credit for one of the business deals because Oliveira determined the client was not a good fit for Ascent. *Id*. ¶ 19. On the grounds that Tuens failed to comply with the Action Plan, U.S. Bank issued a Final Action Plan effective on January 5, 2018, in which Tuens had "less than 60 days" to "develop from scratch two new client engagements." *Id*. ¶ 21. U.S. Bank said the metrics were being issued "in response to [Tuens'] request for accommodation." *Id*.

Tuens did not meet the terms of the Final Action Plan, in part because Oliveira continued to reject potential business prospects "that would have allowed [her] to successfully complete the stated objective, unrealistic as it was." *Id*. ¶¶ 22, 24. On March 3, 2018, U.S. Bank terminated Tuens' employment. *Id*. ¶ 24. Tuens alleges "on information and belief that she was replaced by a younger, non-disabled male employee" whose "sales performance was worse than hers" but who "was never written up or terminated." *Id*. ¶ 22.

### B.     Procedural History

Tuens filed a complaint with the California Department of Fair Employment and Housing ("DFEH") and received an immediate right to sue notice effective February 28, 2019. *Id*. ¶ 24; ECF No. 1-1 at 35-42. On February 27, 2020, Tuens filed suit in San Francisco County Superior Court, alleging twelve claims: (1) discrimination based on disability in violation of California's

3

Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, *et seq.*; (2) failure to accommodate a disability in violation of FEHA; (3) failure to prevent or correct harassment, discrimination, and retaliation in violation of FEHA; (4) disability harassment in violation of FEHA; (5) age discrimination in violation of FEHA ; (6) age harassment in violation of FEHA; (7) gender discrimination in violation of FEHA ; (8) gender harassment in violation of FEHA; (9) retaliation in violation of FEHA; (10) retaliation for taking California Family Rights Act ("CFRA") leave, Cal. Gov't Code § 12945.2, *et seq.*, in violation of FEHA; (11) wrongful discharge in violation of California public policy; and (12) intentional infliction of emotional distress.  Compl. ¶¶ 25-95.

Tuens named U.S. Bank National Association and U.S. Bancorp as defendants in all twelve claims.  *Id.*  She named Oliveira as a defendant in the fourth, sixth, and eighth claims for disability, age, and gender harassment and in the twelfth claim for intentional infliction of emotional distress.[1]  Compl. ¶¶ 44-49, 56-61, 68-73, 90-95.

On May 21, 2020, U.S. Bank removed the case to federal court pursuant to 28 U.S.C. § 1332.  ECF No. 1 ¶ 3.  On May 28, 2020, U.S. Bank and Oliveira filed motions to dismiss the complaint pursuant to Rule 12(b)(6).  ECF Nos. 7, 8.  Tuens' opposition, filed on June 10, 2020, addresses U.S. Bank and Oliveira's "substantially similar" motions together.  ECF No. 15 at 14.  U.S. Bank and Oliveira filed replies on June 18, 2020.[2]  ECF Nos. 17, 18.  The Court took the motions under submission without a hearing.  ECF No. 20.

## II.     JURISDICTION

"Federal courts must satisfy themselves of jurisdiction over the subject matter before proceeding to the merits of the case."  *County of San Diego v. Nielsen*, No. 19CV0631-L-AHG, 2020 WL 3034795, at *2 (S.D. Cal. June 5, 2020) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526

---

[1] On July 1, 2020, the parties stipulated to dismiss former defendant Ascent Private Capital Management without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).  ECF No. 19.

[2] Because Defendants' motions to dismiss and reply briefs raise similar arguments, the Court cites to U.S. Bank's briefs unless otherwise indicated.

4

U.S. 574, 583 (1999)). "Federal courts are courts of limited jurisdiction and may only hear cases they have been authorized to hear by the Constitution and Congress." *N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1253 (C.D. Cal. 2014).

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "District courts have an independent duty to establish subject matter jurisdiction over a removed action regardless of whether a party raises the issue." *Vargas v. Wells Fargo Bank N.A.*, 999 F. Supp. 2d 1171, 1172-73 (N.D. Cal. 2013) (citing *United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004)). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citation omitted). The "strong presumption" against removal jurisdiction must be overcome by the removing party. *Id.*; *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

In its notice of removal, U.S. Bank asserts that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. 1 ¶ 3. Diversity jurisdiction "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Oliveira and Tuens are both citizens of California. U.S. Bank argues that Tuens' joinder of Oliveira is fraudulent, however, because Tuens "obviously" fails to state a cause of action against Oliveira. ECF No. 1 ¶ 9 (citing *Morris*, 236 F.3d at 1067 (holding that joinder of a party is considered fraudulent if "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." (internal quotation marks, alteration, and citation omitted)). Tuens has not filed a motion to remand.

"[T]here are two ways to establish improper joinder: (1) actual fraud in the pleading of

jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (internal quotation marks and citations omitted). "[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 549 (9th Cir. 2018). "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Id.* at 548 (quoting *Hunter*, 582 F.3d at 1046) (alterations in original). Indeed, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)) (emphasis added). "Thus, '[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [any] purported deficiency.'" *Montemayor v. Ford Motor Co.*, No. 2:19-CV-10073-AB-JEM, 2020 WL 3316978, at *2 (C.D. Cal. June 17, 2020) (quoting *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (internal quotation marks omitted)).

Accordingly, on this motion the Court must answer two questions. First, the Court must determine whether Plaintiff states, or might plausibly be able to state, any claim against Oliveira. If so, this Court lacks diversity jurisdiction and the case must be remanded. If not, the Court has subject matter jurisdiction, the case against Oliveira must be dismissed without leave to amend, and the Court can proceed to consider the merits of the remaining defendants' motion. *See Masoud v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-2523-L-JMA, 2017 WL 6270269, at *3 (S.D. Cal. Dec. 8, 2017). The Court therefore considers the arguments in the motions to dismiss in this light.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is

6

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.   DISCUSSION

Defendants move to dismiss each of Tuens' claims under Rule 12(b)(6). In light of the Court's concerns about its own jurisdiction, the Court addresses only those claims in which Oliveira is named as a defendant.

### A.   FEHA Disability, Age, and Gender Harassment

Tuens' fourth, sixth, and eighth claims allege disability, age, and gender harassment, respectively, against both U.S. Bank and Oliveira. Compl. ¶¶ 44-49, 56-61, 68-73. Under FEHA, it is unlawful for an employer to harass an employee because of physical disability, age, or gender. Cal. Gov't Code § 12940(j). FEHA also prohibits harassment by an employee. *See* Cal. Gov't Code § 12940(j)(3) ("An employee . . . is personally liable for any harassment prohibited by this section that is perpetrated by the employee."). Harassment includes "verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996) (footnote omitted); *see also* Cal. Code Regs. tit. 2, § 11019(b) (defining harassment). To be actionable, harassment must be "sufficiently severe or pervasive" to alter the conditions of the victim's employment and create a hostile working environment. *Etter v. Veriflo Corp.*, 67 Cal.

7

App. 4th 457, 464-65 (Cal. Ct. App. 1998) (internal quotation marks and citations omitted). To state a claim for harassment under FEHA, Tuens "must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 129-31 (1999)).

U.S. Bank argues that Tuens has not alleged "severe and pervasive conduct" or any harassment based on a protected status. ECF No. 7-1 at 15-18. The only allegation in Tuens' complaint that might fall within the definition of harassment is Oliveira's remark to Tuens: "[Y]ou don't really want to do this anymore . . . how about you retire . . . finance is a tough and dirty business." Compl. ¶ 13. This remark has no plausible connection to Tuens' gender or disability. *See Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1070 (N.D. Cal. 2011) (to state a claim for harassment, "the alleged hostile conduct must be based on the plaintiff's protected status.") (citing *Nichols v. Azteca Res. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)). Construing the complaint in the light most favorable to Tuens, Oliveira's comment does bear some connection to her age, as it suggests that Tuens was too old to work at U.S. Bank and should consider retiring. A single remark, however, is insufficient to state a claim for harassment. *See Etter*, 67 Cal. App. 4th at 463 ("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'") (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 778 (1998)); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 610 (1989) (isolated acts of harassment are not "sufficiently pervasive").

In addition to the allegedly hostile remark, Tuens claims that U.S. Bank and Oliveira "took multiple, official employment actions that formed a pattern of hostile conduct toward her during her employment," ECF No. 15 at 21, including: (1) failure to engage in an interactive process with Tuens "to determine how her leave of absence and medical condition may have contributed to her ability to perform her regular job duties," Compl. ¶ 13; (2) issuing an Action Plan for unsatisfactory performance based on Tuens' failure to meet the "best-case" business plan she designed during the interview process, *id*. ¶¶ 9, 13; (3) denying Tuens credit for business

8

opportunities she developed, *id.* ¶ 19; (4) issuing Tuens a Final Action Plan "in response to [her] request for accommodation," *id.* ¶ 21; and (5) continuing to undermine Tuens' ability to meet sales metrics by rejecting potential business prospects, *id.* ¶ 22, all of which culminated in Tuens' termination, *id.* ¶ 24.

Typically, personnel management actions such as hiring and firing, job or project assignments, and performance evaluations do not come within FEHA's definition of harassment. *Reno v. Baird*, 18 Cal. 4th 640, 645-47 (1998); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705-07 (2009) (noting the terms "discriminate" and "harass" appear in separate FEHA provisions and define distinct wrongs: "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace"). However, the California Supreme Court has recognized that "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Roby*, 47 Cal. 4th 686 at 709. This secondary effect "occurs when the actions establish a widespread pattern of bias" or are taken in an "unnecessarily demeaning" manner. *Id.* at 709 & n.10 (citing *Miller v. Dep't of Corrs.*, 36 Cal. 4th 446, 466 (2005)).

In *Roby*, for example, the plaintiff had established a pattern of demeaning comments and gestures by her supervisor in relation to her disability. *Id.* at 695, 710-11. In that context, the court found that when the plaintiff's supervisor shunned her during staff meetings, belittled her job, and reprimanded her in front of her coworkers, these actions – although best characterized as official employment actions rather than hostile social interactions – "may have contributed to the hostile message that [the supervisor] was expressing to [the plaintiff] in other, more explicit ways." *Id.* at 709. By contrast, Tuens has alleged a single hostile remark by Oliveira. In this context, the alleged employment actions do not "establish a widespread pattern of bias" or have the "secondary effect of communicating a hostile message" to older workers. *See id.*

U.S. Bank also argues that Tuens' claims are time-barred, given that Oliveira's allegedly hostile remark occurred outside of FEHA's one-year statute of limitations. ECF No. 7-1 at 18. Because Plaintiff filed her DFEH complaint on February 28, 2019, her FEHA harassment claims

9

extend only to events that occurred after February 28, 2018. *See* Cal. Gov't Code § 12960(d) (2018). Oliveira made his only allegedly harassing comment on or about July 20, 2017. Compl. ¶ 13.

Plaintiff responds that Defendants are liable under the continuing violation doctrine, pursuant to which "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005) (citing *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812 (2001)). "The continuing violation doctrine requires proof that (1) the defendant's actions inside and outside the limitations period are sufficiently similar in kind; (2) those actions occurred with sufficient frequency; and (3) those actions have not acquired a degree of permanence." *Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 850-51 (2018) (citing *Richards*, 26 Cal. 4th at 802). Plaintiff's termination occurred within the statute of limitations period, and termination of employment can constitute evidence of harassment under the FEHA. *Niami v. Fed. Express Print Servs., Inc.*, No. C 09-4384 JF, 2010 WL 958045, at *5 (N.D. Cal. Mar. 12, 2010). As explained above, however, Tuens' complaint does not adequately allege the sufficiently frequent incidents of harassing conduct required to invoke the continuing violation doctrine.

The Court therefore finds that Tuens has failed to state a claim for FEHA harassment based on age, gender, or disability. The Court further finds, however, that Tuens could plausibly allege additional facts in support of her FEHA harassment claims that would make them viable. *See* ECF No. 15 at 24 (stating that Tuens could "allege additional facts, such as: Oliveira engaged in hostile, belittling, condescending, and dismissive conduct that was continuous from the time she returned from leave in late-March 2017 up to her termination on March 3, 2018"). The Court thus finds that there is a possibility that Tuens could plead a claim for FEHA harassment against Oliveira.

**B.     Intentional Infliction of Emotional Distress**

Defendants also move to dismiss Tuens' claim for intentional infliction of emotional distress ("IIED") on the ground that it is preempted by the workers' compensation exclusivity rule. ECF No. 7-1 at 24-25.

"The Workers' Compensation Act provides the exclusive remedy for injuries sustained in

10

connection with 'actions that are a normal part of the employment relationship.'" *Ferretti v. Pfizer Inc.*, No. 11-cv-04486, 2012 WL 3638541, at *10 (N.D. Cal Aug. 22, 2012) (quoting *Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 367 (2010)); *see also* Cal. Lab. Code §§ 3600-02. These actions include "demotions and criticism of work practices, . . . even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'" *Singh*, 186 Cal. App. 4th at 367 (quoting *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987) (en banc)). The California Supreme Court has recognized two exceptions to this general rule: (1) for conduct that "contravenes fundamental public policy," and (2) where an employer's conduct "exceeds the risks inherent in the employment relationship." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902-03 (2008) (citing *Livitsanos v. Superior Ct.*, 2 Cal. 4th 744, 754 (1992)).

Only the second exception potentially applies here. The first exception "was meant to permit actions for wrongful termination in violation of a public policy (and not IIED claims)," *Ferretti,* 2012 WL 3638541, at *11, and Tuens makes no wrongful termination claim against Oliveira. As for the second, Tuens is correct that "claims of intentional infliction of emotional distress based on [FEHA] discrimination and retaliation are not subject to workers' compensation exclusivity" because "unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain." ECF No. 15 at 32 (quoting *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017)). Similarly, claims based on harassment are not preempted where the allegedly offensive conduct "was outside the normal course of employment." *Bohnert v. Roman Cath. Archbishop of San Francisco*, 67 F. Supp. 3d 1091, 1098 (N.D. Cal. 2014). Tuens has not stated claims for FEHA harassment against Oliveira but, as the Court noted above, it is possible that she could. Thus, it is also possible that Tuens could state a claim for IIED against Oliveira.

V.     **ORDER TO SHOW CAUSE**

Because "there is a possibility that a state court would find that [Tuens'] complaint states a cause of action against [Oliveira], the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (internal quotation marks and

11

citation omitted).  The Court therefore orders Defendants to show cause why this case should not be remanded to the San Francisco Superior Court.

**CONCLUSION**

For the reasons set forth above, the Court ORDERS DEFENDANTS TO SHOW CAUSE why this case should not be remanded to the San Francisco Superior Court.  A written response to this order is due October 19, 2020.  Any party wishing to respond to the October 19, 2020 response may do so by November 2, 2020.  Unless otherwise ordered, the question of remand will be decided without a hearing.  If no timely response opposing remand is filed, the case will be remanded.

The motions to dismiss are terminated without prejudice to consideration by the appropriate court.

The case management conference currently scheduled for October 6, 2020 is vacated.

**IT IS SO ORDERED.**

Dated:  October 5, 2020



JON S. TIGAR
United States District Judge